Gabriel Pallante, Administrator of the Estate of Rafael Pallante, Deceased, Appellant, v. Illinois Power Company, Appellee.

Gen. No. 8,591.

Heard in this court at the October term, 1931. Opinion filed February 1, 1932.

John G. Friedmeyer and A. Morris Williams, for appellant.

Henry A. Converse, Walter M. Allen and William L. Patton, for appellee.

Mr. Justice Eldredge delivered the opinion of the court.

This is an action in case brought by appellant as administrator of the estate of his wife, Rafael Pallante, deceased, against the Illinois Power Company, to recover damages for her death. There are four counts in the declaration, in the first three of which it is charged that the death of Rafael Pallante was caused by wilful and wanton acts of the servants of

appellee. In the fourth count it is charged that the servant of appellee negligently and carelessly handled and drove said street car toward and into the intersection of Fourteenth and Monroe streets in the City of Springfield without sounding any warning of his approach to said intersection, at a dangerous rate of speed of to wit: 40 miles per hour and that said servant did not have said street car under such control when he approached said intersection so as not to injure said plaintiff's decedent, who was then and there in the act of crossing over said tracks of the defendant while in the exercise of reasonable care for her own safety, etc. The defendant filed the general issue as to all the counts and two special pleas to the first three counts charging wilfulness. In the first special plea it is averred that said Rafael Pallante had an equal opportunity to observe the approach of said street car from the west, with the opportunity which the operator of said street car had to observe the approach of said Rafael Pallante to a point where she would be endangered by the operation of said street car and that nevertheless in wilful and intentional and conscious disregard of her duty in that behalf and with utter disregard of consequences, the said Rafael Pallante recklessly, wilfully, consciously and with an intentional disregard of her duty in that behalf, and with a willingness to accept the chance of injury to herself, and to persons who might be upon the street car of the defendant, intentionally, recklessly, wilfully and consciously either failed to observe the coming of said street car, or having observed the coming of the street car and knowing of its approach and with a conscious willingness to incur injury to herself and to others, in crossing said Monroe street failed to remain in a place of safety where she would not come into collision with said street car, and at a time when the street car was so near at hand that the operator there-

of, with the appliances and means under his control was wholly unable to check the speed of or stop said street car in time to avoid injury to said Rafael Pallante, she, the said Rafael Pallante, wilfully, wantonly, consciously and recklessly left a place of safety upon said street and went in front of and came into collision with said street car. Wherefore, the said wilful and wanton conduct of said Rafael Pallante as above set forth was a proximate cause of her injury and death. And this the defendant is ready to verify. The second special plea, although worded somewhat differently, is substantially the same in its averments. To these special pleas the plaintiff filed replications in which he denies each and every allegation made in the special pleas and concluded to the contrary. The case went to trial upon these pleadings and at the conclusion of the evidence introduced on behalf of plaintiff, on motion of defendant, the trial court excluded the evidence and directed the jury to render a verdict finding it not guilty. Judgment was rendered on this verdict, to reverse which plaintiff prosecutes this appeal.

The accident happened at the intersection of Monroe and Fourteenth streets in the City of Springfield between 10:30 and 11 o'clock on the morning of September 6, 1930, and on a clear, bright day. Monroe street runs east and west and Fourteenth street north and south. Defendant maintained a double track street car line on Monroe street, the north track being for westbound cars and the south for eastbound cars. Monroe street was perfectly straight and just prior to and at the time of the accident there was no traffic of any kind in the vicinity of the intersection of these streets except the deceased and the street car. Two men, W. A. Parker and George Price, were standing on the southeast corner of the intersection of Fourteenth and Monroe streets conversing together. Parker testified that he saw Rafael Pallante, plaintiff's intestate, with whom he was acquainted as a neighbor,

just prior to the accident walking east on the north side of Monroe street toward Fourteenth street and about the same time saw a street car also coming east on Monroe street but which was at that time about at Tenth street, a distance of three blocks; that there was no traffic on the street other than the coming car and nothing to prevent "that I know of from her being able to see the car. Wasn't a thing to distract her attention that I saw." He further testified that when the deceased arrived at the west side of Fourteenth street she turned south to cross Monroe street and looked both east and west when she got off the curbing and at that time the street car was about a block away and in plain sight with nothing in the street to distract her attention therefrom and nothing to divert her mind from the speed of the rapidly approaching car or to deceive her as to its speed which he estimated at 35 miles per hour; that the deceased started south across Monroe street walking faster than she had walked before; "She was walking a little rapidly when she came to Fourteenth street, and was still hurrying when she stepped off the curb and increased her speed as she came to the eastbound tracks." This witness further stated that when she started across the south or eastbound tracks the street car was half a block or 160 feet away from her. Of course it is apparent that the witness' estimate of the distance of the car from the place of accident at that time was a physical impossibility as the car would have had to run at a rate of speed of over 100 miles per hour to have hit her while she was traveling the five feet necessary to cross the tracks. If the car had in fact been running at a rate of speed of 35 miles per hour then when she attempted to cross the tracks in front of it, it would have been 50 feet from her.

The witness Price in substance testified: "The woman seemed to be hurrying. I would say that she had passed the westbound track before I saw her, and

was practically in front of the street car. I hadn't noticed the street car before that. Wasn't paying any attention to it, but saw both before she was struck. I noticed the street car before she was struck. I think it was about 12 feet or something like that. I could see the accident was imminent. Something was bound to happen. I would judge the street car was running 18 to 20 miles per hour.'' Price had been a street car conductor and had some experience in judging speed of street cars. If his estimate of the speed was correct then the car was only 40 feet from the deceased when she attempted to pass in front of it.

But one conclusion can be deduced from this evidence, viz.: that when the deceased started to cross the street she looked both east and west and as there was no obstruction whatever to her view she must necessarily have seen the approaching car, and that she hurried to cross the tracks in front of it. The motorman had as much right to presume that she would stop and let the car pass as she had a right to presume that the car would stop and let her pass or that by hurrying she could successfully pass in front of the car without being struck thereby. Each had equal facilities of seeing the position of the other. Before the deceased attempted to pass over the tracks in front of the approaching car she was in a zone of safety and the motorman had a right to assume that she would stop and allow his car to pass. *Morgan v. Rockford, B. & J. Ry. Co.*, 251 Ill. App. 127; *Chicago, R. I. & P. R. Co. v. Austin*, 69 Ill. 426; *Chicago, B. & Q. Ry. Co. v. Sack*, 129 Ill. App. 58; *Casey v. Chicago & E. I. R. Co.*, 152 Ill. App. 441; *Storm v. Cleveland, C., C. & St. L. R. Co.*, 156 Ill. App. 88. In the case of *Newell v. Cleveland, C., C. & St. L. R. Co.*, 261 Ill. 505, it was held: ''Where a railroad train and a person traveling on the highway each approaches a railroad crossing at the same time, it is not the duty of the company to stop its train, but it is the duty of the

traveler, in obedience to the known custom of the country, to stop and not attempt to pass in front of the advancing train."

There is nothing in the evidence in this case tending to show that the motorman could have done anything to have prevented the injury after the deceased had placed herself in a position of peril. It is perfectly clear that the deceased saw the car approaching within a short distance of the crossing and through mistaken judgment thought she could safely pass over the tracks before the car reached the crossing which unfortunately was not the case and under such circumstances there can be no recovery.

The judgment of the circuit court is affirmed.

*Affirmed.*